# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| NCR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:16-cv-04114-SCJ |
| v. | ) | |
| | ) | |
| PENDUM, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BURROUGHS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

Jeremy U. Littlefield
Rachel F. Gage
ROBBINS ROSS ALLOY BELINFANTE
LITTLEFIELD LLC
999 Peachtree Street NE, Suite 1120
Atlanta, Georgia 30309-3996
Telephone: (678) 701-9381
Facsimile: (404) 856-3250

Stephen E. Baskin
Richard A. Spehr
Richard M. Assmus
Dara M. Kurlancheek
Emily M. Pence
Daniel F. Fisher
MAYER BROWN LLP
1999 K Street, NW
Washington, D.C. 20006
Telephone: (202) 263-3364
Facsimile: (202) 263-5365

*Attorneys for Plaintiff NCR Corporation*

# <u>TABLE OF CONTENTS</u>

Page

Preliminary Statement.................................................................................1

Facts Set Forth in the Complaint ...............................................................2

Argument.....................................................................................................4

I.      Standard of Review.........................................................................5

II.     The Complaint Sufficiently Pleads Claims for Direct Trademark
        Infringement. ..................................................................................6

        A.      NCR Adequately Pleaded That Pendum Used the NCR
                Trademarks Without Authorization. ....................................7

        B.      NCR Adequately Pleaded Likelihood of Confusion............8

III.    The Complaint Sufficiently Pleads a Claim for Direct Copyright
        Infringement. ..................................................................................9

        A.      NCR Adequately Pleaded That Defendants Copied Original
                Elements of the NCR Copyrights Without Authorization. ...............10

                1.      Defendants Directly Copied the NCR Copyrights..................11

                2.      Defendants' Copying of The NCR Copyrights and
                        Proprietary NCR Data Sheets Was Without
                        Authorization. ........................................................13

        B.      It Is Inappropriate To Resolve Defendants' Affirmative Defense
                Under 15 U.S.C. § 117(c) at This Stage............................14

                1.      Defendants Fail To Prove That the Complaint Establishes
                        That Any Unauthorized Copies of the NCR Copyrights
                        Were Created "Solely By Virtue Of The Activation Of A
                        Machine."................................................................15

                2.      Defendants Fail To Prove That the Complaint Establishes
                        That the NCR Copyrights Were Copied Solely for
                        Purposes of Maintenance or Repair. .......................17

                3.      Defendants' Motion Fails To Adequately Address NCR's
                        Copyright Registrations. ........................................18

        C.      There Is No Evidence That Unauthorized Copies of the NCR
                Copyrights Were Created at the Direction of the NCR ATMs'
                Respective Owners and/or Lessees. ..................................18

i

# **TABLE OF CONTENTS**
(continued)

Page

IV.    NCR's Complaint States Claims for Tortious Interference with
Contractual Relations and Business Relations. ...........................................19

    A.    Burroughs Tortiously Interfered with NCR's Contractual
Relations with Pendum......................................................................19

    B.    Burroughs Tortiously Interfered with Current and Prospective
Business Relations............................................................................22

Conclusion ....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbasi v. Bhalodwala*,
   149 F. Supp. 3d 1372 (M.D. Ga. 2015) ..........................................................5, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................5

*Atlanta Mkt. Ctr. Mgmt Co. v. McLane*,
   503 S.E.2d 278 (Ga. 1998) ................................................................................21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................5

*Benson v. Coca Cola Co.*,
   795 F.2d 973 (11th Cir. 1986) ...........................................................................10

*BMC-The Benchmark Mgmt. Co.*, No. 05-CV-1149-WSD, 2007 WL
   2126272 (N.D. Ga. July 23, 2007).....................................................................22

*Brilliant Alts., Inc. v. Feed Mgmt. Sys. Inc.*,
   No. 09-CV-2348-RWS, 2012 WL 1600411 (N.D. Ga. May 7,
   2012) .............................................................................................................23, 25

*Burroughs Payment Sys. v. Symco Grp. Inc.*,
   No. 10-CV-03029-JEC, 2010 WL 5603444 (N.D. Ga. Dec. 6,
   2010) ...................................................................................................................12

*Burroughs Payment Systems, Inc. v. Symco Group, Inc.*,
   No. 10-CV-03029-JEC, slip op. (N.D. Ga. Dec. 13, 2011)..........................11, 12

*CMAX/Cleveland, Inc. v. UCR, Inc.*,
   804 F. Supp. 337 (M.D. Ga. 1992) .....................................................................14

*Costello Pub. Co. v. Rotelle*,
   670 F.2d 1035 (D.C. Cir.1981)...........................................................................14

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)...............................................................................15, 16, 19

## TABLE OF AUTHORITIES
(continued)

*In re Hercules Auto. Prods.*,
   245 B.R. 903 (Bankr. M.D. Ga. 1999) ............................................................21

*Herzog v. Castle Rock Entm't*,
   193 F.3d 1241 (11th Cir. 1999) ......................................................................10

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ..........................................................................11

*Ordonez-Dawes v. Turnkey Props., Inc.*,
   No. 06-60557-CIV, 2007 WL 1614515 (S.D. Fla. Apr. 5, 2007) ....................12

*Perry v. Unum Life Ins. Co. of Am.*,
   353 F. Supp. 2d 1237 (N.D. Ga. 2005)............................................................21

*Phillips v. JP Morgan Chase*,
   No. 11-CV-2194-TWT, 2012 WL 996766 (N.D. Ga. Mar. 22,
   2012) .................................................................................................................5

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ........................................................................14

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
   421 F.3d 1307 (Fed. Cir. 2005) ............................................................15, 16, 17

*SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*,
   No. 10-CV-1815-Orl-28GJK, 2012 WL 360170 (M.D. Fla. Feb. 2,
   2012) ...............................................................................................................14

*T-12 Entm't, LLC v. Young Kings Enters., Inc.*,
   36 F. Supp. 3d 1380 (N.D. Ga. 2014)............................................................8, 9

*Tingley Sys., Inc. v. HealthLink, Inc.*,
   509 F. Supp. 2d 1209 (M.D. Fla. 2007)..........................................................14

*U.S. Anchor Mfg. Inc. v. Rule Indus. Inc.*,
   717 F. Supp. 1565 (N.D. Ga. 1989).................................................................24

*U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*,
   137 F. Supp.3d 1340 (S.D. Ga. 2015) ......................................................*passim*

## <u>TABLE OF AUTHORITIES</u>
(continued)

Page

*Vulcan Golf, LLC v. Google, Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ....................................................9

**Statutes**

17 U.S.C. § 117(c) ...............................................................................15, 17

17 U.S.C. § 117(d) .....................................................................................17

Fed. R. Civ. P. 8 .......................................................................................5, 10

**Other Authorities**

2 Nimmer on Copyright § 8.08 (2017) ..............................................16, 19

Plaintiff NCR Corporation ("Plaintiff" or "NCR") respectfully submits this Memorandum of Law in Opposition to Defendants Pendum, LLC ("Pendum") and Burroughs, Inc.' ("Burroughs") (collectively, the "Defendants") Motion to Dismiss the Complaint (the "Motion").

## PRELIMINARY STATEMENT

Defendants' Motion should be denied in its entirety because its arguments that NCR failed to adequately plead claims for trademark infringement, copyright infringement, and tortious interference with contractual relations and business relations are completely without merit.

Defendants' attempt to paint NCR as a bad actor distracts from the well-pleaded facts in NCR's Complaint.  Burroughs is an underhanded competitor that acquired Pendum, an authorized NCR reseller, to improperly gain access to NCR's confidential sales information and repair know-how, then misappropriated NCR's trademarks, copyrighted works, and proprietary information without authority.

Pendum also failed to notify NCR prior to the acquisition – despite the notice requirement in the Reseller Agreement[1] designed to protect against the misuse of NCR's Protected Items (defined below).  Burroughs influenced that decision through its contact with Pendum up to and upon closure of the acquisition.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Complaint.

NCR's Complaint specifically describes Burroughs' purposeful interference with NCR's contract with Pendum and with NCR's contract with its client, Frost Bank, among others. The Complaint also describes how Pendum and Burroughs used NCR's valid trademarks and copyrights without authorization to the confusion of consumers and to the detriment of NCR.

Because NCR's Complaint states claims for Defendants' misconduct and meets the applicable pleading requirements, the Motion should be denied, and the case should move forward with discovery.

## FACTS SET FORTH IN THE COMPLAINT

NCR is a global technology leader in consumer transaction technologies, a leading manufacturer of automatic teller machines ("ATMs") and other hardware, a developer of related financial software, and a service provider for its products. Compl. ¶ 2. NCR carefully selects third parties to become authorized NCR resellers and/or service providers for its ATMs. *Id*. ¶¶ 23-24.

In fall 2010, approximately five years before Burroughs' acquisition of Pendum, NCR entered into a Reseller Agreement with Pendum. *Id.* ¶¶ 3-4. Burroughs played absolutely no role in the negotiation, drafting, or execution of the Reseller Agreement. The Reseller Agreement authorized Pendum – and only Pendum – to resell and service NCR ATMs using NCR trademarks, NCR dongles, copyrighted software, and NCR proprietary and confidential data (collectively, the

2

"NCR Protected Items"), subject to specific limitations set forth therein.  *See id.* ¶¶ 4, 28-51, 72-75, 77-78, 80, 85-86.

Section 17.2 of the Reseller Agreement expressly forbids Pendum from assigning the Reseller Agreement, and Section 17.3 requires Pendum to promptly notify NCR of any change in ownership.  *Id.* ¶ 9; Ex. A §§ 17.2 & 17.3.  On or around January 30, 2015, Pendum was acquired by Burroughs.  *Id.* ¶ 5.  Pendum did not provide NCR with advanced written notice of the acquisition.  *Id.* ¶ 8.  Yet, immediately following the acquisition, Burroughs integrated Pendum's business into its own, modifying its web sites, taking over the Pendum customer service line, and representing to potential customers that it was an authorized NCR reseller.  *Id.* ¶¶ 53-55.

Pendum's rights in the Reseller Agreement were limited to Pendum's use of the NCR Protected Items *only* within the "Territory" defined in Exhibit A to the Reseller Agreement.[2]  *Id.* ¶¶ 43, 61-63.  Further, when holding itself out as an NCR authorized service provider in that Territory, Pendum agreed to use only NCR or NCR-approved parts.  *Id.* ¶ 45.  However, NCR discovered that Pendum, among other things, was using the NCR Protected Items to service financial institutions (*i.e.*, Frost Bank) outside of the defined "Territory."  *Id.* ¶ 6; Ex. B at 60.  In

---

[2] "Territory" is defined in Exhibit A to the Reseller Agreement as financial institutions in the United States with assets *less than* three billion dollars and all industries in the United States other than financial institutions, excluding those identified in Exhibit A, attachment A1 to the Reseller Agreement.  Compl. ¶ 43.

addition, Pendum and Burroughs presented themselves as NCR authorized partners to financial institutions while failing to use NCR certified parts. *Id.* ¶ 84. In making these false representations, Pendum and Burroughs improperly used the NCR Protected Items and caused damage to NCR. *See id.* ¶¶ 4, 28-51, 72-75, 77-78, 80, 85-86.

Burroughs also tortiously interfered with NCR's current and prospective business relations with Frost Bank. Compl. ¶ 7; Ex. C. By virtue of the Pendum acquisition, Burroughs misrepresented itself as an authorized NCR reseller and/or service provider. *Id.* ¶¶ 7, 11, 44, 51-52, 54-59, 82-84; Exs. C & E. Burroughs did so knowing that it was never an authorized NCR reseller and knowing full well that Pendum's service of Frost Bank directly violates the Reseller Agreement. Compl. ¶¶ 6, 8-10, 24, 26, 29, 43, 49, 51-52, 57-59, 61-66, 75, 81; Exs. B & D. Burroughs' misleading solicitation to Frost Bank induced Frost Bank to discontinue its current servicing business with NCR and will likely lead to NCR's continued loss of business from Frost Bank. Compl. ¶¶ 65-68, 75-77, 136-141.

<u>**ARGUMENT**</u>

NCR's Complaint sets forth the above facts and additional facts that plainly support the claims asserted against Defendants. Because Defendants' arguments miss the mark entirely and serve only to distract from the clear, viable legal claims asserted in the Complaint, the Motion should be denied.

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require the pleading to contain "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff." *Phillips v. JP Morgan Chase*, No. 11-CV-2194-TWT, 2012 WL 996766, at *1 (N.D. Ga. Mar. 22, 2012); *see also Abbasi v. Bhalodwala*, 149 F. Supp. 3d 1372, 1376 (M.D. Ga. 2015). A complaint may survive a motion to dismiss for failure to state a claim, "even if it is 'improbable' that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely 'remote and unlikely.'" *Phillips*, 2012 WL 996766, at *1 (quoting *Twombly*, 550

U.S. at 556).  NCR's Complaint meets these well-accepted pleading standards, and, as a result, the Court should deny Defendants' Motion.

## II.    THE COMPLAINT SUFFICIENTLY PLEADS CLAIMS FOR DIRECT TRADEMARK INFRINGEMENT.

Defendants offer two erroneous arguments that NCR's claims for trademark infringement against Pendum[3] are insufficiently pleaded.  First, Pendum asserts that, because the Reseller Agreement between NCR and Pendum authorized Pendum to use NCR's trademarks,[4] NCR failed to plead that Pendum used the NCR trademarks without consent.  The Reseller Agreement, however, does not grant Pendum an unlimited license to use the NCR trademarks.  To the contrary, and as detailed in the Complaint, Pendum was provided a *limited* license to use the NCR trademarks within an identified Territory and in relation to specific actions.  Compl. ¶¶24, 26, 29, 42-43, 50, 61-63, 80.  NCR's claims relate to Pendum's improper use of NCR's trademarks outside of that designated Territory, as described in the Complaint and herein.  Compl. ¶¶ 52-59, 65-68, 82-83, 92, 97.

Second, Pendum alleges that NCR failed to identify how or why Pendum's use of the NCR's trademarks is likely to cause confusion about the *origin* of the ATMs.  This is wrong.  NCR's Complaint clearly pleads consumer confusion in

---

[3] Defendants do not move to dismiss NCR's Trademark Infringement claims against Burroughs.

[4] NCR is the owner and licensor of intellectual property utilized in connection with its ATM business which provides a wide range of software services under, *inter alia*, certain federally registered trademarks.  Compl. ¶ 32.

several distinct ways, including as to NCR's perceived "sponsorship or approval" of Pendum when it operates outside of the scope of the license and thus not as an authorized NCR reseller, when it sold and serviced NCR ATMs outside of the Territory, and when Pendum failed to meet NCR requirements as an authorized service provider when servicing ATMs.  Compl. ¶¶ 30, 45, 71, 92, 97.

### A. NCR Adequately Pleaded That Pendum Used the NCR Trademarks Without Authorization.

Defendants argue the Reseller Agreement was a blanket authorization for Pendum to use the NCR trademarks wherever and whenever it pleased.  To the contrary, the Reseller Agreement provides Pendum with a *limited* license to use the NCR trademarks within an identified Territory (*i.e.*, in connection with "financial institutions in the United States with assets *less than* three billion dollars and all industries in the United States other than financial institutions," excluding certain customers identified in, the Reseller Agreement).  Compl. ¶ 43 (emphasis added). Further, the Reseller Agreement requires that, before using the NCR trademarks in any marketing materials, Pendum must obtain NCR's prior approval.  *Id.* ¶ 50.

As the Complaint states, Pendum's use of the NCR trademarks in connection with certain third parties outside of the Territory (*e.g.*, Bank of the West, and Hancock Bank) was without authorization.  *Id.* ¶ 68.

NCR also granted limited rights to Pendum to use the NCR trademarks to represent itself as an NCR authorized service provider, when it was in compliance

with the terms of the Reseller Agreement. *Id.* ¶¶ 40, 50-51. This included certain specific requirements, for example, that Pendum use only NCR-certified parts. Instead, Pendum improperly held itself out as an NCR authorized service provider while secretly and intentionally not using NCR-certified parts in its repairs.

Thus, NCR properly pleaded that Pendum itself used the NCR trademarks without authorization, and Pendum's argument should be rejected.

**B.    NCR Adequately Pleaded Likelihood of Confusion.**

NCR's claims do not relate to confusion over the origin of the NCR ATMs, as alleged in the Motion. Instead, the Complaint describes NCR's concerns that consumers are likely to be confused as to NCR's "sponsorship or approval" of Pendum's actions when it used the NCR trademarks in commerce for activities that NCR did not actually authorize. *Id.* ¶¶ 55, 61-63, 68, 81-84, 92, 97.

To adequately plead likelihood of confusion, NCR "need only offer enough facts to make a likelihood of confusion plausible." *T-12 Entm't, LLC v. Young Kings Enters., Inc.*, 36 F. Supp. 3d 1380, 1391 (N.D. Ga. 2014). In support of its concerns, NCR alleges that Pendum lacked permission to offer and/or advertise Pendum's goods and/or services in commerce (supra) while using the NCR trademarks in advertising channels used by NCR (*e.g.*, the internet, regular channel of business) directed toward the same consumer (*i.e.*, users of NCR ATMs) without NCR's authorization. Compl. ¶¶ 55, 68, 82.

This Court has previously found that similar allegations permit a reasonable inference of consumer confusion above the speculative level. *See generally*, *T-12 Entm't, LLC*, 36 F. Supp. 3d 1380. In addition, Pendum used the NCR trademarks to hold itself out as an NCR-certified service provider while failing to provide services that met with those requirements. Compl. ¶30, 45, 53-54, 71.

Furthermore, a finding of likelihood of confusion is a question of fact not appropriately resolved in a motion to dismiss. *See*, *e.g.*, *Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008) ("'likelihood of confusion' a fact-specific inquiry best left for decision after discovery"). As such, Defendants' argument that NCR has not established the likelihood of consumer confusion is premature, at best, and no basis to support dismissal of NCR's claim.

Based on the foregoing, NCR has sufficiently pleaded Trademark infringement claims under the Lanham Act, and, therefore, Defendants' Motion should be denied.

## III. THE COMPLAINT SUFFICIENTLY PLEADS A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT.

Defendants' Motion claims the Complaint lacks allegations of copying. Motion, III(B)(1). However, as set forth in the Complaint and discussed herein, NCR alleges Defendants created unauthorized copies of the NCR Copyrights when servicing certain third parties' NCR ATMs by using the NCR Dongles to cause the copyright ATM System Application to be copied to the working memory of NCR

ATMs without authorization.  Compl. ¶¶ 6, 24, 26-29, 34-36, 49, 53-57, 61-68, 72-78, 104-106; Ex. B.  In addition, without authorization, Burroughs reproduced and distributed NCR's copyrighted Data Sheets.  *Id.* ¶¶ 57-58, 78-79.

Defendants also allege that Section 117(c) of the Copyright Act shields Defendants from liability, because the customer license to the ATM software covers Defendants' service of the machines.  As described in the Complaint and below, the NCR Copyrights have purposes beyond machine activation (*e.g.*, providing diagnostic tools for trouble-shooting).  *Id.* ¶¶ 28, 34, 103.  Further, there is no evidence provided regarding the scope of the software license to the ATM end users.  Thus, both these defenses are premature and should be rejected.

### A.    NCR Adequately Pleaded That Defendants Copied Original Elements of the NCR Copyrights Without Authorization.

Defendants contend that NCR's Complaint fails to show that NCR's protected information was copied without authorization.  This argument fails for several reasons.   To prove copying, a plaintiff may offer direct proof *or* demonstrate that the defendants had access to the copyrighted work and that the resulting works are "substantially similar."  *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999) (citing *Benson v. Coca Cola Co.*, 795 F.2d 973, 974 (11th Cir. 1986)).  As this is the pleading stage, NCR has plainly satisfied its requirements to adequately plead this claim.  *See* Fed. R. Civ. P. 8.

1.    *Defendants Directly Copied the NCR Copyrights.*

As stated in the Complaint, Defendants created unauthorized copies of the NCR Copyrights when servicing certain third parties' NCR ATMs, (*e.g.*, Frost Bank, Bank of the West, and Hancock Bank (collectively, the "Prohibited Entities")).  Compl. ¶¶ 60, 65, 67-68; *see MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ("Copying," for purposes of copyright law, occurs when computer program is transferred from permanent storage device to computer's random access memory (RAM)).  This alone ends the inquiry, resulting in denial of the Motion on this claim.

To be sure, Burroughs previously acknowledged that its actions here resulted in direct copies of NCR's copyright-protected software.  Specifically, in *Burroughs Payment Systems, Inc.*[5] *v. Symco Group, Inc.*, No. 10-CV-03029-JEC (slip op.) (N.D. Ga. Dec. 13, 2011), Burroughs agreed that direct copies of software are created when using a machine (such as an ATM) embedded with software such as the NCR Copyrights:

> "[u]nlike a book, which can be accessed and used (*i.e.*, read) without copying, a computer program cannot be accessed and used until the program is loaded or "copied" from storage into temporary memory – the random access memory (RAM).  So using software typically involves copying."

---

[5] Burroughs, Inc. was formerly known as Burroughs Payment Systems Inc.  The name was changed in September 2012.

*See Burroughs Payment Sys. v. Symco Grp. Inc.*, No. 10-CV-03029-JEC, 2010 WL 5603444 (N.D. Ga. Dec. 6, 2010).

Thus, Burroughs has already conceded that the allegations in the Complaint adequately set forth facts of copying NCR's protected software. *See Burroughs Payment Sys.*, slip op. at 6 (N.D. Ga. Dec. 13, 2011) ("The prevailing view among the circuits is that loading and using software can create a copy because the protected work is transferred from permanent storage to temporary storage, also known as random access storage, or RAM") (citations omitted).

In addition to conceding that NCR's Complaint pleads a claim for copyright infringement, Defendants' reliance on *Burroughs Payment Systems*, where the complaint was silent on facts related to servicing of the machine, is misplaced. *Id.* Here, NCR explicitly identified the Prohibited Entities such that Defendants are aware of when and under what circumstances the NCR Copyrights were unlawfully copied. NCR need not pinpoint anything further. *Ordonez-Dawes v. Turnkey Props., Inc.*, No. 06-60557-CIV, 2007 WL 1614515, at *3 (S.D. Fla. Apr. 5, 2007) ("Unless Plaintiff [was] privy to Defendants' actions, Plaintiff would be unable to pinpoint the specific acts which transpired between Defendants and the third parties, nor the timing of those acts.").[6]

---

[6] While this Court in *Burroughs Payment Systems* distinguished the *Tracfone Wireless* case, it is directly relevant here. In *Tracfone*, the plaintiff also alleged an "elaborate scheme" where the defendants worked together to access the proprietary

Defendants also ignore the allegation that, without authorization, Pendum shared NCR's proprietary NCR Data Sheets with Burroughs who unlawfully reproduced and distributed the NCR Data Sheets via its web site. *See* Compl. ¶¶ 28-29, 38-39, 43, 49, 52-54, 57-58, 60, 62-63, 65, 73, 79; Ex. A. Hence, in addition to the well-pleaded NCR Copyrights claims, NCR also properly pleaded Defendants' reproduction and/or distribution of the proprietary NCR Data Sheets.

2.   *Defendants' Copying of The NCR Copyrights and Proprietary NCR Data Sheets Was Without Authorization.*

Pendum was not authorized to reproduce and/or distribute the NCR Copyrights and/or proprietary Data Sheets in connection with the Prohibited Entities. *Id.* ¶¶ 28, 43, 49, 62-63, 73; Ex. A. Pendum also had no authority to use NCR's Copyrights once the Reseller Agreement was terminated. *See Id.* ¶¶ 28, 73. Of course, Burroughs, which was never an authorized NCR reseller, never had any authority, a fact Defendants' Motion ignores. *Id.* ¶ 49.

In sum, Pendum's actions as pled were not authorized as they exceeded the scope of the license when Pendum sold or serviced NCR ATMs either 1) outside the defined Territory and/or 2) after the Reseller Agreement was terminated. *See*,

---

software. These factual allegations, according to this Court, provided further detail where dismissal was not appropriate. Here, in addition to stating additional facts with particularity related to the servicing of the machines (*i.e.*, specifying the Prohibited Entities), NCR has similarly set forth a scheme where Defendants joined forces, via acquisition, to circumvent the Reseller Agreement, misappropriate NCRs confidential proprietary information, and infringe on its copyrights. *See* Compl. ¶¶ 52-54.

*e.g.*, *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1217 (M.D. Fla. 2007) (A copyright owner may bring a claim for infringement against a licensee whose actions exceed the scope of the license); *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F. Supp. 337, 356-57 (M.D. Ga. 1992) (favorably citing *Costello Pub. Co. v. Rotelle,* 670 F.2d 1035, 1043 (D.C. Cir.1981) (A material breach of, and/or failure to satisfy a condition of, the copyright license agreement constitutes infringement); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-1089 (9th Cir. 1989) (licensee infringes owner's copyright if licensee's use exceeds scope of copyright). As further pleaded, Burroughs was never authorized to make use of the NCR Copyrights and/or NCR Data Sheets. Compl. ¶ 49.

Hence, NCR properly pleaded Defendants' copying was without authorization, and therefore, its copyright infringement claims survive the Motion.

## B. It Is Inappropriate To Resolve Defendants' Affirmative Defense Under 15 U.S.C. § 117(c) at This Stage.

Defendants raise an affirmative defense under Section 117 of the Copyright Act, claiming they are not liable for copyright infringement simply by turning on the machine to service it. This affirmative defense is premature *and* improperly assumes facts not set forth in the Complaint. *See*, *e.g.*, *SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*, No. 10-CV-1815-Orl-28GJK, 2012 WL 360170, at *3 (M.D. Fla. Feb. 2, 2012) (finding it impossible, at the pleading stage, to determine whether fact-specific requirements of Section 117 defense are satisfied); *see also*

14

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985) (noting that an affirmative defense to copyright infringement requires a case-by-case (*i.e.*, highly factual, analysis)); *See generally*, Compl.

The *StorageTek* case, which Defendants primarily rely on, proves this point. *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307 (Fed. Cir. 2005). In *StorageTek*, the parties engaged in extensive fact discovery regarding the functionality of the software at issue. *Id.* Technical experts were also retained to analyze the technology and advise the court. *Id.* Obviously, none of this exists here at this very early stage of the lawsuit.

Moreover, even if appropriate to consider, Defendants fail to satisfy their burden of establishing this affirmative defense based on the pleadings (*i.e.*, that the owner or lessee of an NCR ATM authorized Defendants to make a copy of the NCR Copyrights for the sole purpose of maintenance or repair). There is no evidence that every aspect of the NCR Copyrights are necessary for activation of the NCR ATM, and the NCR Copyrights were not otherwise accessed or used. *See generally*, Compl.; *see also* 17 U.S.C. § 117(c).

    1.    *Defendants Fail To Prove That the Complaint Establishes That Any Unauthorized Copies of the NCR Copyrights Were Created "Solely By Virtue Of The Activation Of A Machine."*

At no point does the Complaint posit that Defendants copied the NCR Copyrights solely by virtue of activating the NCR ATMs. *See generally*, Compl.

To be sure, Defendants' Motion does not cite any fact from the Complaint supporting this position, and, instead, Defendants fail to address this requirement at all. *See generally*, Motion. As the Federal Circuit in *StorageTek* made clear:

> "[a]ccessing software programs, such as freestanding diagnosis and utility programs, that are not needed to boot up the computer and make that determination, ***goes too far*** because access to those programs is not strictly necessary to verify that the computer is "working in accordance with its original specifications."

421 F.3d at 1314 (emphasis added).

As the Complaint makes equally clear, residing within the NCR Copyrights are various freestanding programs (*e.g.*, diagnostic tools, operating system, highly sensitive confidential data and specifications) that are central to NCR's market competitiveness. Compl. ¶¶ 36-37. Further, Defendants themselves acknowledge that the NCR Copyrights have purposes beyond machine activation, (*e.g.*, providing diagnostic tools for trouble-shooting). Compl. ¶ 28, 34, 104.

To that end, Defendants have failed to prove (let alone suggest) that the unauthorized copies of the NCR Copyrights created by Defendants were, in fact, "solely by virtue of the activation of a machine," as is Defendants' burden to prove. *See, e.g.*, 2 Nimmer on Copyright § 8.08 (2017); *Harper & Row Publishers, Inc.*, 471 U.S. 539 (1985).

16

2.    *Defendants Fail To Prove That the Complaint Establishes That the NCR Copyrights Were Copied Solely for Purposes of Maintenance or Repair.*

Defendants claim that their activities are shielded by an affirmative defense against claims of infringement for the repair of hardware.  But, no fact set forth in the Complaint establishes that Defendants' actions with regard to NCR ATMs containing the NCR Copyrights were, in fact, "maintenance" and/or "repair," as defined by Section 117(d).  *See generally*, Compl.  Specifically, maintenance is defined as "servicing of the machine in order to make it work in accordance with its original specifications and any changes to those specifications authorized for that machine," whereas repair is defined as "the restoring of the machine to the state of working in accordance with its original specifications and any changes to those specifications authorized for that machine."  *See* 17 U.S.C. § 117(c) & (d).

Whether Defendants' use is properly classified as "maintenance and repair" depends in large part on both services being rendered and the duration thereof. *See*, *Storage Tech.*, 421 F.3d at 1322.  NCR, however, has not pled any facts that establish the specific type and/or duration of Defendants' purported maintenance and repair of the NCR ATMs.  *See generally*, Compl.  Absent additional facts, it is impossible to determine now whether Defendants qualify for safe harbor under Section 117(c).  *See*, *e.g.*, *Storage Tech.*, 421 F.3d at 1322.

3.    *Defendants' Motion Fails To Adequately Address NCR's Copyright Registrations.*

Defendants' Motion only mounts the affirmative defense as against Defendants' use of the ATM System Application and completely ignores the System Application Diagnostics system and Data Sheets identified as infringed in the Complaint. *See generally*, Motion; *see also* Compl. ¶ 79.  Importantly, as stated above, it is Defendants' burden to prove their affirmative defense under Section 117(c).  Failure to address one of the bases for copyright infringement is reason alone to deny the motion, as Defendants have not met their burden – as a matter of law – that they are entitled to dismissal as to *all* of NCR's copyright claims, which explicitly relate to both the System Application *and* the System Application Diagnostics.  Compl. ¶¶ 100-108.

Based on the foregoing, and under the Copyright Act, NCR has sufficiently pled infringement.  Defendants are not shielded from liability as a matter of law, and, therefore, Defendants' Motion should be denied.

**C.    There Is No Evidence That Unauthorized Copies of the NCR Copyrights Were Created at the Direction of the NCR ATMs' Respective Owners and/or Lessees.**

Defendants claim that their repair or service of NCR ATMs owned by financial institutions "was within the scope of Plaintiff's customer licenses." Motion at 19-21.  Yet, these purported customers are not identified, and there are

no pleaded facts related to specific third-party customer licenses, least of which Defendants' purported benefits vis-à-vis the same.  *See generally*, Compl.

To that end, Defendants have failed to prove that the Complaint establishes that the unauthorized copies of the NCR Copyrights were created at the direction of the NCR ATMs' respective owners and/or lessees, as is Defendants' burden to prove in connection with Section 117's affirmative defense.  *See, e.g.*, 2 Nimmer on Copyright § 8.08 (2017); *Harper & Row Publishers, Inc.*, 471 U.S. 539 (1985).

## IV.  NCR'S COMPLAINT STATES CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND BUSINESS RELATIONS.

### A.  Burroughs Tortiously Interfered with NCR's Contractual Relations with Pendum.

Defendants assert that, since Burroughs is the ultimate parent of Pendum, Burroughs cannot be held liable for tortious interference with NCR and Pendum's relationship.  *See* Motion at 22-23.[7]  However, as the Complaint adequately pleads, Burroughs is a stranger to the Reseller Agreement (*see* Compl. ¶¶ 5, 40, 51-52, 57), and it tortiously interfered with NCR's contractual relations with Pendum.[8]

---

[7] Defendants do not address the other elements of tortious interference with the NCR-Pendum relationship.  NCR has no obligation to address the non-disputed elements of its claim herein.  Nonetheless, the Complaint contains sufficient allegations supporting each of the elements of the claim.  NCR is willing to brief that issue upon the Court's request.

[8] Defendants admit that Burroughs "is not a party to the Pendum Agreements." Motion at 2.

The disputed element – "improper action or wrongful conduct by the defendant without privilege" – has two parts.  *See U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp.3d 1340, 1371 (S.D. Ga. 2015).  First, under Georgia law, courts have found "improper action or wrongful conduct" to include "fraud or misrepresentation" or "us[e] of confidential information."  *Id.*  Burroughs' wrongful conduct included "fraud or misrepresentation" or "using confidential information" when it acquired Pendum to, without authorization, represent itself as an authorized NCR reseller and/or service provider.  *Id.*; *see* Compl. ¶¶ 51-59, 80-84.  Further, Burroughs also acted improperly by not having Pendum provide notice to NCR of the acquisition.  *See* Compl. Ex. A § 17.3; ¶¶ 10, 52.   Burroughs then used the acquisition, unbeknownst to NCR, to improperly gain access to the NCR Protected Items.  *See id.* ¶¶ 40-89.

Second, Burroughs acted "without privilege."  Under Georgia law, "without privilege" means that the defendant "was a stranger to the contract or business relation at issue."  *U.S. Capital Funding VI, Ltd.*, 137 F. Supp. 3d at 1372.  As the Complaint pleads, the Reseller Agreement was executed in 2010, yet Burroughs' acquisition of Pendum did not take place until January 30, 2015.  Compl. ¶¶ 5, 40.  Several of the allegations pleaded to support this claim occurred just before the acquisition; thus, for these tortious acts, there is no question that Burroughs is liable.  Moreover, Burroughs should not be shielded from liability by virtue of an

acquisition that occurred five years after the Reseller Agreement was executed.[9] *See U.S. Capital Funding VI, Ltd.*, 137 F. Supp. 3d at 1372 ("[W]hile a third party is not necessarily a 'stranger' to the contract simply because he is not a party to the contract, the third party must have 'a direct economic interest in or [be in a position to] benefit from a contract with which [he is] alleged to have interfered' to be exempt from liability under the stranger doctrine.") (alterations in original) (quoting *Atlanta Mkt. Ctr. Mgmt Co. v. McLane*, 503 S.E.2d 278, 283 (Ga. 1998)).

Defendants' reliance on case law to show that Burroughs acted with privilege is unavailing.  Defendants cite *Perry v. Unum Life Ins. Co. of Am.*, 353 F. Supp. 2d 1237 (N.D. Ga. 2005), and *In re Hercules Auto. Prods.*, 245 B.R. 903 (Bankr. M.D. Ga. 1999), to support their claim that a parent corporation, as a matter of law, can never be a stranger to its subsidiaries' business or contractual relations.  *See* Motion at 22-23.  However, those cases involve a situation where either (1) the parent/subsidiary relationship pre-dated the formation of the contract (*e.g.*, *Perry*, 353 F. Supp. 2d at 1238-41) or (2) the defendant was linked to the plaintiff via "an interwoven contractual arrangement" between the plaintiff, parent corporation, and subsidiary (*e.g.*, *Hercules*, 245 B.R. at 910).  Further, other cases dismissing claims against a defendant for tortious interference by virtue of

---

[9] Any holding to the contrary would allow a company to tortiously interfere with a third party's pre-existing contract yet avoid all liability by subsequently (even years later) acquiring one of the companies to that contract.

Georgia's stranger doctrine involve situations where the defendant was either (1) a third-party beneficiary to the contractual relationship at issue when the contract was formed or (2) a related party to the contract at issue, such as an agent, attorney, corporate president, and/or employee supervisor acting in relation to or on behalf of parties to the contract at issue.  *See e.g., BMC-The Benchmark Mgmt. Co.*, No. 05-CV-1149-WSD, 2007 WL 2126272, at *7 (N.D. Ga. July 23, 2007).

None of these factual scenarios are even close to what occurred here.  The unique facts pleaded in the Complaint plainly provide a scenario that warrants denial of the Motion on this claim.  *See U.S. Capital Funding VI, Ltd.*, 137 F. Supp. 3d at 1372, 1374 (denying defendant's motion to dismiss and holding that nothing in the record demonstrated that the defendant had a legal right to engage in the conduct underlying plaintiff's tortious interference claim).  Burroughs was a complete stranger to the Reseller Agreement and the business relationship giving rise to it.  Compl. ¶¶ 5, 40, 51-52, 57.  Burroughs acted improperly to interfere with that agreement, thereby creating the factual scenario supporting NCR's claim. Burroughs' attempt to use its interference as a defense is improper and should not be allowed.

## B.  Burroughs Tortiously Interfered with Current and Prospective Business Relations.

Burroughs argues that NCR's tortious interference claim should be dismissed for a failure to identify the specifically impacted customer relationships.

The Complaint, however, sufficiently pleads that Burroughs tortiously interfered with NCR's current and prospective business relations with at least Frost Bank.

Under Georgia law, a claim for tortious interference with business relations requires that the defendant "1) acted improperly and without privilege; 2) acted purposely and with malice or intent to injure; 3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and 4) caused the plaintiff financial injury." *Brilliant Alts., Inc. v. Feed Mgmt. Sys. Inc.*, No. 09-CV-2348-RWS, 2012 WL 1600411, at *5 (N.D. Ga. May 7, 2012). These elements have each been sufficiently pleaded.

First, the Complaint sufficiently pleads that Burroughs acted improperly by participating in "fraud and misrepresentation" when it represented itself to Frost Bank (and others) as an authorized NCR reseller and/or servicer. *See* Compl. ¶¶ 55-59, 65, 68 and 76-84; *Abbasi*, 149 F. Supp. 3d at 1380. Further, Burroughs acted without privilege, since it was a "stranger to [NCR's contract with Frost Bank] and [the] business relation" between NCR and Frost Bank. *U.S. Capital Funding VI, Ltd.*, 137 F. Supp. 3d at 1371; Compl. ¶¶ 63-66.[10]

---

[10] Further, as set forth in the Complaint, NCR's contracts with Pendum expressly prohibited Pendum from servicing Frost Bank (Compl. ¶¶ 42-44, 63-66), and Burroughs, upon information and belief, could not service Frost Bank absent its acquisition of NCR's copyrighted materials and proprietary data from Pendum. *See* Compl. ¶¶ 61-69, 81, 85-89.

Second, under Georgia law, an "action is malicious when it is taken with knowledge of [the] plaintiff's rights, and with the intent to interfere therewith . . . '[p]ersonal ill will or animosity is not essential; rather, any unauthorized interference, or any interference without legal justification or excuse, will suffice." *U.S. Capital Funding VI, Ltd.*, 137 F. Supp. 3d at 1373 (internal citations omitted). The Complaint sufficiently pleads that Burroughs acted purposely and with malice or intent to injure, because it misrepresented itself to Frost Bank as an authorized NCR reseller and/or service provider for the sole purpose of persuading Frost Bank to select its servicing business over NCR's business.  Compl. ¶¶ 65, 75-78, 84, 136-139; *see also U.S. Capital Funding VI, Ltd.*, 137 F. Supp. 3d at 1373 ("Persuading a person to break a contract for the indirect purpose of injuring the plaintiff or benefiting the defendant at the expense of the plaintiff is a malicious and actionable act if injury arises from it.") (internal citations omitted); *U.S. Anchor Mfg. Inc. v. Rule Indus. Inc.*, 717 F. Supp. 1565, 1577 (N.D. Ga. 1989) ("Interference with the plaintiff's relationship with its customers, suppliers, or representatives will support a cause of action for tortious interference even though such relationships may be terminable at will.").

Third, by misrepresenting itself as an authorized NCR reseller and/or service provider, Burroughs "induced [Frost Bank] not to enter into or continue a business

relationship with" NCR. *Brilliant Alts.*, 2012 WL 1600411, at *5; Compl. ¶¶ 57, 75-78, 84.

Finally, there is no question that NCR has sufficiently pleaded that it has been damaged by Burroughs' actions. *See* Compl. ¶¶ 64-69, 84. Not only did NCR lose its servicing business with Frost Bank, but NCR also suffered potential damage to its goodwill with an important customer now that Burroughs may be servicing Frost Bank's NCR ATMs with non-NCR trained technicians and non-NCR certified parts. *Id.* ¶ 84. The full breadth of NCR's damages will be determined at trial. *Id.* ¶ 141.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety. However, should the Court require more support for any of NCR's claims, NCR respectfully requests leave to amend the Complaint.

25

Dated:        April 14, 2017
              Atlanta, Georgia

                              Respectfully submitted,

                               */s/ Jeremy U. Littlefield*
                              Jeremy U. Littlefield
                              GA Bar No. 141539
                              Rachel F. Gage
                              GA Bar No. 547982
                              ROBBINS ROSS ALLOY BELINFANTE
                              LITTLEFIELD LLC
                              999 Peachtree Street NE, Suite 1120
                              Atlanta, Georgia 30309-3996
                              Telephone: (678) 701-9381
                              Facsimile: (404) 856-3250
                              jlittlefield@robbinsfirm.com
                              rgage@robbinsifrm.com

                              Stephen E. Baskin
                              Richard A. Spehr
                              Richard M. Assmus
                              Dara M. Kurlancheek
                              Emily M. Pence
                              Daniel F. Fisher
                              MAYER BROWN LLP
                              1999 K Street, NW
                              Washington D.C., 20006
                              Telephone: (202) 263-3364
                              Facsimile: (202) 263-5365
                              sbaskin@mayerbrown.com
                              rspehr@mayerbrown.com
                              rassmus@mayerbrown.com
                              dkurlancheek@mayerbrown.com
                              epence@mayerbrown.com
                              daniel.fisher@mayerbrown.com

26

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record via electronic court filing (ECF) this 14th day of April, 2017.

<u>/s/ Jeremy U. Littlefield</u>
Jeremy U. Littlefield
GA Bar No. 141539
