IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

NCR CORPORATION,                     )
                                     )
            Plaintiff,               )
                                     )
      v.                             )     C.A. No. 1:16-cv-04114-SCJ
                                     )
PENDUM, LLC,                         )
                                     )
and                                  )
                                     )
BURROUGHS, INC.,                     )
                                     )
            Defendants.              )
                                     )

## SECOND AMENDED COMPLAINT

Pursuant to the Court's Order dated August 8, 2018 [Doc. No. 48], Plaintiff NCR Corporation ("NCR") files this Second Amended Complaint against Defendants Pendum, LLC ("Pendum") and Burroughs, Inc. ("Burroughs") (collectively, "Defendants").

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, copyright infringement, misappropriation of trade secrets, unauthorized use of confidential information, and breach of NCR's agreements with Pendum, including the Reseller Agreement, effective November 1, 2010 (the "Reseller Agreement"), the Shared Maintenance Provider Program Addendum, effective October 1, 2010 ("Addendum"), and the

Diagnostic Software License Addendum ("License Addendum").  Copies of the Reseller Agreement, the Addendum, and the License Addendum are attached hereto as Exhibit A.

2.     NCR is a global technology leader in consumer transaction technologies, including within the financial services industry.  NCR is a leading manufacturer of automatic teller machines ("ATMs") and other hardware, and a developer of related software, and a service provider for both.

3.     Until Pendum breached the Reseller Agreement, Pendum was an NCR-authorized partner offering the sale and service of NCR ATMs for community banks, credit unions, off-premise deployers, and gaming and retail establishments.

4.     Under the Reseller Agreement, Pendum was authorized to act as a reseller and service provider for NCR products and services within the territories specifically defined in Exhibit A of that Reseller Agreement.  When acting within those territories, Pendum was authorized to use NCR intellectual property and confidential information to fulfill its role as a reseller and service provider.  However, Pendum began improperly using NCR's intellectual property and confidential information outside of its role as an authorized reseller and service

provider, outside of its authorized territory, and beyond the scope of the license granted to Pendum.

5.     On or around January 30, 2015, Pendum was acquired by Burroughs (the "Acquisition").   Pendum and Burroughs continued to utilize NCR's intellectual property and confidential information outside of the territory identified in the Reseller Agreement, and beyond the scope of the license granted to Pendum.

6.     On May 19, 2016, more than a year after the Acquisition, NCR sent a letter directed to Pendum's President and Chief Executive Officer, Larry McCarter, informing Pendum that it had breached the Reseller Agreement by selling NCR products and contracting to provide NCR-supported maintenance to institutions outside of the territory defined in the Reseller Agreement.  A copy of the May 19, 2016 letter is attached hereto as Exhibit B.

7.     NCR received a response dated June 10, 2016 from Mr. McCarter, on Burroughs' letterhead, identifying Mr. McCarter as Burroughs' President and Chief Executive Officer.  A copy of the June 10, 2016 letter is attached hereto as Exhibit C.

8.     In that letter, Mr. McCarter stated that "[t]he Reseller Agreement between Pendum and NCR, dated November 1, 2010, was assigned to Burroughs

- 3 -

in connection with the Pendum Acquisition." This letter was the first written notice NCR received that the Reseller Agreement had been assigned to Burroughs.

9. Assignment of the Reseller Agreement was expressly forbidden under Section 17.2, which provides, in relevant part, that "[n]either [Pendum] nor NCR may assign this Agreement, in whole or in part, or its rights or obligations under this Agreement without the express written consent of the other."

10. On August 1, 2016, NCR replied to Burroughs' June 1, 2016 letter, advising Pendum and Burroughs that, among other breaches, Pendum had also breached Section 17.2 of the Reseller Agreement by unlawfully assigning it to Burroughs. A copy of the August 1, 2016 letter is attached hereto as Exhibit D.

11. Burroughs' outside counsel responded on August 18, 2016, abruptly reversing course and stating to NCR that Mr. McCarter was incorrect, that the Reseller Agreement had not been assigned to Burroughs, and that Pendum remained the counterparty to NCR under the Reseller Agreement. A copy of the August 18, 2016 letter is attached hereto as Exhibit E.

12. The two conflicting views that Pendum and Burroughs presented to NCR were confusing, especially given that it appeared that Pendum had been completely integrated into Burroughs' operation. However, regardless of the position taken, the fact remains that (a) Pendum and/or Burroughs is in direct

breach of the Reseller Agreement and (b) Burroughs has unlawfully used NCR data, proprietary software, confidential information, and trademarks without NCR's consent.

## **THE PARTIES**

13.     NCR is a Maryland corporation with its principal place of business in Duluth, Georgia.

14.     On information and belief, Pendum is a Delaware limited liability company and now a wholly-owned subsidiary of Burroughs.  The Reseller Agreement states that Pendum's principal place of business is Denver, Colorado. Upon information and belief, Pendum has substantial operations relevant to this dispute in the Northern District of Georgia.

15.     On information and belief, Burroughs is a Delaware corporation with its principal place of business in Plymouth, Michigan, and has substantial operations relevant to this dispute in the Northern District of Georgia.

16.     On information and belief, Defendants' registered agent, CT Corporation Systems, is located at 1201 Peachtree Street, NE, Fulton, Atlanta, Georgia.

## JURISDICTION AND VENUE

17.    This action raises federal questions under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., the Copyright Act, 17 U.S.C. §§ 101, *et seq*., and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq*. such that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a result thereof.

18.    The Court has supplemental jurisdiction over NCR's other claims pursuant to 28 U.S.C. § 1367.

19.    This Court has personal jurisdiction over all Defendants because Pendum and Burroughs regularly transact business within the Northern District of Georgia.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

### A.    NCR's Reseller Network

21.    NCR's software, hardware, and services process more than 450 million consumer transactions every day, and its diverse products include ATMs and related software, point of sale terminals and related software, electronic boarding passes and other travel-related technologies, stadium management

software, loyalty program software, and digital signage, among many other technologies.

22.    NCR's ATM products service financial institutions and other highly sensitive industries which process and/or store personally identifiable information and support financial transactions.  Because of the sensitive nature of the processing that NCR's ATM products perform, NCR closely monitors the sales and service of its ATMs.

23.    NCR sells its ATMs to certain financial-institution customers directly. For other customers, NCR uses a reseller network to sell and service its ATMs. Importantly, NCR carefully selects third parties to become resellers and service providers for its ATM products.

24.    To become an NCR-authorized reseller, NCR requires that each reseller execute a reseller agreement.  Each reseller is authorized to resell NCR's products and identify itself as an NCR-authorized reseller to certain customers in a specified "territory", as specifically defined in the reseller agreement.  These restrictions are included in all of NCR's reseller agreements.

25.    Each reseller agreement also contains reporting requirements for the reseller related to the sale and servicing of NCR's ATMs and also specific

limitations on the permitted use of NCR intellectual property and confidential information.

26.    The territory restrictions and reporting requirements in each reseller agreement are critical to NCR's relationships with its resellers and, most importantly, with its financial-institution customers.   These provisions define where and with whom the resellers can operate and do business as an authorized NCR representative, and also set forth certain financial requirements from which NCR derives revenue.

27.    Some resellers are also NCR-authorized service providers.   To become an NCR-authorized service provider, NCR resellers execute addenda that supplement, but are subject to, the reseller agreement.

28.    Upon execution of an agreement to become an authorized service provider, a reseller receives NCR "dongles" (the "NCR Dongles") used to access NCR's proprietary diagnostic software uploaded to NCR's ATMs.   The NCR Dongles are the keys to NCR's most sensitive proprietary information, and use is limited to specific time periods with renewals only permitted to those resellers that are in strict compliance with restrictions and confidentiality provisions, among others, included in the reseller agreements.

29.   NCR's proprietary diagnostic software resident on its ATMs – ATM System Application – Version 04.02.00, Version 04.04.00, and Version 04.05.00 ("ATM System Application") – facilitates the processing of consumer transactions from ATMs across financial networks, and includes software diagnostic tools for trouble-shooting and servicing those ATMs ("System Application Diagnostics"). The System Application Diagnostics is only available to authorized NCR service providers via the NCR Dongles.

30.   NCR's reseller agreements explicitly prohibit a reseller from using NCR's intellectual property and confidential information referenced above except as authorized in the agreement (including, in certain instances, a requirement that NCR pre-approve such use) or from sharing *with anyone* confidential proprietary information provided by NCR to the resellers.

31.   NCR's reseller agreements require resellers to service its ATMs with parts from NCR or NCR-approved parts providers.  This requirement for genuine NCR parts is critical to ensure the security and integrity of the ATM products that NCR provides to its financial-institution customers.  NCR carefully selects only certain qualified companies to be NCR-approved service providers, and NCR provides extensive technical training to these companies to enable them to properly and securely service NCR ATMs.

### B.    Pendum and the Reseller Agreement

32.    Pendum had long been an NCR-authorized reseller and service provider and was intimately aware of NCR's treatment of its valuable intellectual property rights and intention to maintain and protect its valuable confidential information.   The Reseller Agreement, effective in 2010, clearly states the importance of protecting these items.

33.    Section 3 of the Reseller Agreement contains the "Appointment and Scope" of the Agreement, setting out the extent of the rights that NCR granted to Pendum.

34.    Under Section 3.1, NCR appointed Pendum as a reseller of the NCR Products ("Products") listed in Exhibit A to the Reseller Agreement and granted Pendum the right to purchase those Products from NCR or an NCR-authorized third-party and resell them directly to customers located in a defined territory.

35.    The "Territory" in which Pendum may operate as an authorized NCR representative is clearly defined in Exhibit A to the Reseller Agreement as financial institutions in the United States with assets *less than* three billion dollars and all industries in the United States other than financial institutions, excluding those identified in Exhibit A, Attachment A1 to the Reseller Agreement (*hereinafter*, the "Territory").

36.     In relevant part, Exhibit A to the Reseller Agreement also prohibits Pendum from selling any products that directly compete with those of NCR (for example, Nautilus Hyosung ATMs that, upon information and belief, are sold and/or serviced by Burroughs).

37.     The Reseller Agreement and its addenda also require Pendum—as an authorized NCR service provider—to report to NCR the number and model of ATMs that it has serviced, and to declare each unit of NCR hardware (along with associated peripherals and features) used or sold.  This is important because NCR derives revenue from its reseller agreements and servicing addenda through an annual per-unit Shared Maintenance Fee.

### C.     Through the Acquisition of Pendum, Burroughs Has Improperly Used NCR Intellectual Property and Confidential Information

38.     Only Pendum was an authorized reseller and service provider for NCR under the Reseller Agreement.

39.     From approximately February 2015 to June 2016, Burroughs and/or Pendum failed to provide NCR with written notice of the Acquisition and failed to seek consent for the assignment as required by Section 17.2 of the Reseller Agreement.

40.     Upon information and belief, Pendum's service provider business was completely integrated into Burroughs' service provider business on or after February 2015.

41.     Upon information and belief, Burroughs continued to control and service Pendum's customer accounts that Pendum maintained before the Acquisition.  For instance, during the relevant time period, Pendum's website provided the same business address as Burroughs, and the phone number listed on Pendum's website for service plays a recording instructing all callers to contact 1-800-Burroughs.

42.     Burroughs also changed its website to include, without NCR's authorization, several prominent references to NCR.  For example, Burroughs' website stated—absent any authorization—that it was an authorized seller and service provider for NCR ATMs and had a "partnership" with NCR.  The website was also modified, without authorization, to state that it was an "NCR Interact Elite Special Provider."

43.     Before NCR filed its initial Complaint on or about November 2, 2016, Burroughs' website had advertised Nautilus Hyosung ATMs and promoted its partnership with Nautilus Hyosung to sell and service that company's ATMs, which compete with NCR's ATMs.

- 12 -

44.     Upon information and belief, during that same time period, Burroughs was using NCR's Dongles, proprietary software and confidential information provided to Pendum to service the accounts that Burroughs obtained from Pendum following the Acquisition.

45.     Burroughs and NCR do not have any written contract or other agreement that renders it an NCR-authorized reseller or service provider of NCR ATMs.

46.     Burroughs has never had permission or authority to advertise or promote NCR ATMs on its website, and it never had authority to use the NCR logos, trademarks or product data sheets.

47.     Section 6.3 of the Reseller Agreement states that NCR Diagnostic Tools (i.e., "computer programs, data, documentation, and other materials which NCR may provide for use in diagnosing or maintain Products [as defined in the agreement]… [which] may be firmware… pre-installed or product disk drives, or… loaded in memory from disks or other removable media") are "solely for use in supporting Products" and may not be provided to "any other person or entity."

48.     Section 1 of the License Addendum further states that NCR grants Pendum a license to use the NCR software, including the ATM System Application, "solely to service and maintain [p]roducts you [Pendum] have

declared" provided that the license is subject to Pendum paying NCR the associated fee per such product.

### D.   Pendum and/or Burroughs' Violations of the Reseller Agreement

49.    Section 3.2 of the Reseller Agreement restricts Pendum from selling NCR products and identifying itself as an authorized NCR reseller outside of Pendum's territory.

50.    As referenced in paragraph 35, Exhibit A to the Reseller Agreement specifically defines Pendum's authorized territory as those financial institutions in the United States whose asset size is *less than* three billion dollars and all industries in the United States that are not financial institutions.  (Ex. A to the Reseller Agreement, Section 1).

51.    Exhibit A of the Reseller Agreement further provides that Pendum is not permitted to sell NCR products or provide NCR-supported maintenance service on NCR Products to excluded accounts.  Excluded accounts are defined as those financial institutions whose asset size is more than three billion dollars and specific accounts listed in Attachment A1 of Exhibit A to the Reseller Agreement.

52.    Frost Bank is a financial holding company with over 31 billion dollars in assets as of September 30, 2017.  Frost Bank provides a full range of business

and consumer banking products.  Frost Bank is, by definition, an excluded account under the Reseller Agreement.

53.    Following the Acquisition, Burroughs and Pendum provided maintenance services to Frost Bank.  Upon information and belief, Burroughs (and Pendum) serviced Frost Bank ATMs using the NCR Dongles that were intended to be used only for in-territory financial institutions, thus using—without authority— NCR's proprietary System Application Diagnostic software and other confidential proprietary materials to service out-of-territory ATMs.

54.    NCR's May 19, 2016 letter to Pendum notified Pendum that its contracting to provide NCR-supported maintenance services to Frost Bank was a breach of the Reseller Agreement.  NCR instructed Pendum to immediately cure this breach within 30 days of receipt of the letter.  On information and belief, Pendum did not comply with that instruction.

55.    On information and belief, Pendum/Burroughs' servicing of NCR ATMs outside its permitted territory is not limited to Frost Bank and involves at least one other major financial institution.

56.    The Reseller Agreement prohibits Pendum from servicing financial institutions as an NCR-authorized reseller with assets larger than three billion dollars.  However, upon information and belief, Pendum (and Burroughs)—

representing themselves as an authorized NCR reseller—have also actively solicited and bid on business from Bank of the West and Hancock Bank, banks with assets over three billion dollars.

57.     It is clear that (a) Pendum is in breach of Section 17.2 of the Reseller Agreement, which prohibits assignment of the agreement without both notice to and consent by NCR, and/or (b) Burroughs has used NCR's intellectual property and confidential information without authorization.  Either way, Defendants have improperly used, disclosed, provided access to, and shared NCR confidential, proprietary trade secret information, including, but not limited to, the NCR Dongles, to service ATMs and NCR's System Application Diagnostics that reside on the ATMs.

### E.     Use of NCR Trade Secrets and/or Confidential Information

58.     Section 8.2 of the Reseller Agreement requires any party to the Reseller Agreement "to prevent the disclosure of Confidential Information [as defined therein and which includes the Diagnostic Tools] to any other person, unless disclosure is required by law."

59.     Section 6.3 of the Reseller Agreement classifies the Diagnostic Tools as being "NCR's confidential information" thereby forbidding Pendum from disclosing the same.

60.     Upon information and belief, Pendum disclosed to Burroughs, and possibly others, certain trade secrets and/or confidential information that Pendum received from NCR pursuant to the Reseller Agreement.

## CAUSES OF ACTION

## COUNT I: TRADEMARK INFRINGEMENT

### Against Defendants
### Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1)(A)

61.     NCR hereby re-alleges and incorporates herein the allegations set forth in Paragraphs 1-12, 24-25, 30-35, 38, 40-42, 45-46, and 49-57 of this Complaint.

62.     Only NCR-authorized resellers that have executed an NCR reseller agreement are authorized to use NCR's trademarks as provided by those agreements.

63.     NCR's trademarks, recognized worldwide, are among its most valuable assets.  The trademarks were in use by NCR at all times relevant to the allegations herein.

64.     NCR owns federal registrations for the NCR Logo (Reg. No. 2398182 - shown below), for the word mark NCR (Reg. No. 4458847) (for "maintenance of computer software; consultation in the field of computers, namely, application

development, assessing and evaluating customer requirements including hardware and software"); (Reg. No. 5344274) (for "consultation in the field of computers; namely, application development, assessing and evaluating customer requirements including hardware and software"); and NCR SelfServ (Reg. No. 3914658) (for "automated teller machines")  (collectively, the " Registered Marks").



### A.     Pendum has Infringed Upon NCR's Registered Marks

65.     Section 9 of the Reseller Agreement establishes limitations on the use of NCR's Registered Marks.  Unless authorized by agreement, this includes a prohibition on any entity using NCR's name, or any NCR Registered Mark in advertising, publicity or signage.

66.     Specifically, Section 9.5 of the Reseller Agreement prohibits Pendum from using any marketing materials with NCR's Registered Marks which are not pre-approved by NCR and/or conform to its standards.

67.     Without NCR's authorization, Pendum knowingly and willfully used NCR's Registered Marks in commerce in connection with the sale, offering for sale, distribution, or advertising of financial goods and services in a manner that is

likely to cause confusion, or to cause mistake, or to deceive as to the origin of Pendum's goods and services.

68.    Upon information and belief, Pendum used NCR's Registered Marks to hold itself out as an authorized service provider outside of the Territory. Thus, if working with Pendum, a customer would also incorrectly believe that it is partnering directly with an NCR-approved partner or reseller that would include, for example, NCR-trained technicians who are using NCR-certified parts.

69.    Upon information and belief, Pendum's unauthorized use of the Registered Marks enabled Pendum to obtain servicing contracts with institutions outside of the Territory such as Frost Bank, among other major financial institutions.

70.    Upon information and belief, Pendum—using NCR's Registered Marks—has also actively solicited and bid on business from Bank of the West and Hancock Bank—banks also outside of the Territory.

71.    NCR has suffered damages and irreparable harm as a result of Pendum's actions and will continue to suffer irreparable injury unless Pendum and its respective officers, agents, and employees and all persons acting in concert therewith, are enjoined from engaging in any further such acts which infringe upon NCR's rights under the Lanham Act, 15 U.S.C. § 1114(1)(a).

**B.      Burroughs has Infringed Upon NCR's Registered Marks**

72.     Only Pendum was authorized to be a reseller and service provider for NCR under the Reseller Agreement within the Territory.

73.     From approximately February 2015 to June 2016, Burroughs and/or Pendum failed to provide NCR with official written notice of the Acquisition and failed to seek consent for the assignment as required by Section 17.2 of the Reseller Agreement.

74.     Through its acquisition of Pendum, Burroughs—without NCR's authorization—knowingly and willfully used NCR's Registered Marks in commerce in connection with the sale, offering for sale, distribution, or advertising of financial goods and services in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the origin of Burroughs' goods and services. Absent authorization from NCR, Burroughs changed its website to include several prominent references to NCR.  On or around September 2016, Burroughs began using NCR's Registered Marks on its website, located at least at:

> a.      http://www.burroughs.com/Products/ATMSolutions/NCRSelfse rvATMs.aspx
>
> b.      http://www.burroughs.com/Products/ATMSolutions/NCRSelfse rvATMs/DepositATMs.aspx
>
> c.      http://www.burroughs.com/Products/ATMSolutions/NCRSelfse rvATMs/DepositATMs/NCRSelfServ32.aspx

    d.    http://www.burroughs.com/Products/ATMSolutions/NCRSelfse
rvATMs/DepositATMs/NCRSelfServ34Driveup.aspx

    e.    http://www.burroughs.com/Products/ATMSolutions/NCRSelfse
rvATMs/DepositATMs/NCRSelfServ34Walkup.aspx

    f.    http://www.burroughs.com/Products/ATMSolutions/NCRSelfse
rvATMs/DepositATMs/NCRSelfServ38Island.aspx[1]

75.     NCR did not authorize and/or pre-approve the aforementioned uses by Burroughs.

76.     Upon information and belief, Burroughs also used NCR's Registered Marks to hold itself out as an authorized service provider.  Thus, if working with Burroughs, a customer would also incorrectly believe that it is partnering directly with an NCR-approved partner or reseller that would include, for example, NCR-trained technicians who are using NCR-certified parts.

77.     Upon information and belief, the use of NCR's Registered Marks by Burroughs misled Frost Bank, among other major financial institutions, into believing that Burroughs was an NCR-authorized service provider.   Upon information and belief, Burroughs—while improperly using NCR's Registered Marks—also actively solicited and bid on business from Bank of the West and Hancock Bank.

---

[1] These links were active as of September 2016. Sometime thereafter, Burroughs removed them from their website. Screenshots of some of these links are provided in Exhibits G-J.

78.     NCR has suffered damages and irreparable harm as a result of these infringing actions and will continue to suffer irreparable injury unless Burroughs and its respective officers, agents, and employees and all persons acting in concert therewith, are enjoined from engaging in any further such acts which infringe NCR's rights under the Lanham Act, 15 U.S.C. § 1114(1)(a).

## COUNT II: FALSE DESIGNATION OF ORIGIN

### Against Defendants
### False Association under the Lanham Act, 15 U.S.C. § 1125(A)

79.     NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs  1-12, 24-25, 30-35, 38, 40-42, 45-46, and 49-57 of this Complaint.

80.     NCR owns federal registrations for the NCR Logo (Reg. No. 2398182 - shown below), for the word mark NCR (Reg. No. 4458847) (for "maintenance of computer software; consultation in the field of computers, namely, application development, assessing and evaluating customer requirements including hardware and software"); (Reg. No. 5344274) (for "consultation in the field of computers; namely, application development, assessing and evaluating customer requirements including hardware and software"); and NCR SelfServ (Reg. No. 3914658) (for "automated teller machines") (collectively, the "Registered Marks").

81.     NCR also owns common law trademark rights in Personas, NCR EasyPoint, NCR Cash Recycler, NCR Cash Recycler Pro, NCR APTRA Edge,

NCR APTRA Promote, NCR APTRA Relate, NCR APTRA Vision, and NCR APTRA eMarketing (collectively, the "Marks").



82.　Only authorized NCR resellers are permitted to utilize NCR's Registered Marks and Marks to resell NCR's products and identify themselves as NCR-authorized resellers within the Territory.  These restrictions are included in all of NCR's reseller agreements.

83.　Section 9 of the Reseller Agreement includes a prohibition against Pendum identifying itself as an authorized reseller to any account outside of the Territory.

### A.　Pendum has Infringed Upon NCR's Registered Marks and Marks

84.　Pendum knowingly and willfully used the Registered Marks and Marks in commerce to, without authorization, hold itself out to be an authorized NCR reseller outside of the Territory in connection with the sale, offering for sale, distribution, or advertising of financial goods and services in a manner that was likely to cause confusion, or mistake, or to deceive as to the origin of Pendum's goods and services.

85.     Upon information and belief, Pendum used NCR's Registered Marks and Marks to hold itself out as an authorized service provider.  Thus, if working with Pendum, a customer would also incorrectly believe that it is partnering directly with an NCR-approved partner or reseller that would include, for example, NCR-trained technicians who are using NCR-certified parts.

86.     Upon information and belief, Pendum's infringement of NCR's Registered Marks and Marks enabled Pendum to obtain servicing contracts with institutions outside of the Territory such as Frost Bank, among other major financial institutions.

87.     Upon information and belief, Pendum—using NCR's Registered Marks and Marks and representing itself as an authorized NCR reseller outside of the Territory—has also actively solicited and bid on business from Bank of the West and Hancock Bank.

88.     NCR has suffered damages and irreparable harm as a result of these infringing actions and will continue to suffer irreparable injury unless Pendum and its respective officers, agents, and employees and all persons acting in concert therewith, are enjoined from engaging in any further such acts which infringe upon NCR's rights under the Lanham Act, 15 U.S.C. § 1125(A)

### B.     Burroughs has Infringed Upon NCR's Registered Marks and Marks

89.     Only Pendum was an authorized NCR reseller and service provider under the Reseller Agreement, but only within the Territory.

90.     Through the acquisition of Pendum, Burroughs—without NCR's authorization—knowingly and willfully used the Registered Marks and Marks in commerce in connection with the sale, offering for sale, distribution, or advertising of financial goods and services in a manner that is likely to cause confusion, or mistake, or to deceive as to the origin of Burroughs' goods and services.

91.     Absent authorization from NCR, Burroughs changed its website to include several prominent references to NCR.  For example, Burroughs' website stated that it was an authorized seller and service provider for NCR ATMs and has a "partnership" with NCR.  The website was also modified, still without authorization, to state that it is an "NCR Interact Elite Special Provider." These statements were not true.

92.     Burroughs also began using NCR's Registered Marks and Marks via its website on or around September 2016.

93.     NCR did not authorize the uses of NCR's Registered Marks and Marks by Burroughs on its website or for any other purpose.

94.    From reviewing Burroughs' website alone, a financial-institution customer or consumer would be misled into believing that Burroughs was an NCR-authorized reseller and/or service provider for NCR ATMs.

95.    Upon information and belief, Burroughs used NCR's Registered Marks and Marks to hold itself out as an authorized service provider.  Thus, from reviewing Burroughs website alone, a financial-institution customer or consumer would be misled into believing that Burroughs was an NCR-authorized reseller and/or service provider for NCR ATMs and is partnering directly with an NCR-approved partner or reseller that would include, for example, NCR-trained technicians who are using NCR-certified parts.

96.    Upon information and belief, Burroughs misled Frost Bank, among other major financial institutions, into believing that Burroughs was an NCR-authorized service provider.

97.    Upon information and belief, Burroughs—representing itself as an authorized NCR reseller—has also actively solicited and bid on business from Bank of the West and Hancock Bank.

98.    NCR has suffered damages and irreparable harm as a result of these infringing actions and will continue to suffer irreparable injury unless Burroughs and its respective officers, agents, and employees and all persons acting in concert

therewith, are enjoined from engaging in any further such acts which infringe upon NCR's rights under the Lanham Act, 15 U.S.C. § 1125(A).

## COUNT III: COPYRIGHT INFRINGEMENT

### Against Defendants
### Under 17 U.S.C. § 501 et *seq*.

99.    NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs 1-12, 23-24, 27-30, 32-33, 35, 38, 40, 44-45, 46, 49-58 of this Complaint.

100.   NCR has created and is the exclusive owner of works comprising images and/or text that constitute copyrightable subject matter under the Copyright Act.

101.   The NCR software resident on its ATMs—the System Application Diagnostics—is part of NCR's copyrightable works. ("the System Application Diagnostics").

102.   NCR owns United States Copyright Registration No. TX0008259221, titled ATM System Application 04.02.00 and No. TX0008259272, titled ATM System Application 04.04.00, which cover the System Application Diagnostics. Exhibit F.

103.   NCR only grants authorized resellers access to the ATM System Application via the NCR Dongles, which serve as authorization keys to transmit

and operate the diagnostics tools within NCR's ATM System Application.  The software contains highly sensitive, confidential data and specifications that are internally developed and are copyright protected.

104.  Defendants have reproduced and/or distributed the ATM System Application without authorization from NCR.

### A.    Pendum Has Infringed on NCR's Copyrighted Works

105.  Section 6.3 of the Reseller Agreement permits Pendum to use the NCR System Application only in connection with authorized Products and *within the* Territory.

106.  Pendum gains access to NCR's proprietary ATM software via the NCR Dongles.  The Dongles are also a part of NCR's proprietary ATM software.

107.  No party other than Pendum has authorization under the Reseller Agreement and Addendum to use NCR's Dongles or the associated System Application Diagnostic software owned and developed by NCR.

108.  Pendum has provided maintenance services to Frost Bank, among other financial institutions outside of the Territory, using the NCR Dongles that were intended to be used only for in-Territory financial institutions, thus using—without authority—NCR's proprietary System Application Diagnostic software.

109.   The reproduction of the ATM System Application is not made solely by virtue of the activation of the machine.   Furthermore, Pendum has used a portion of that software in connection with its servicing of the ATMs separate and apart from any copy made by virtue of the machine's activation.

110.   This unauthorized use, reproduction, and/or distribution of NCR's copyrighted ATM System Application has been, and continues to be, knowing and willful.

111.   Pendum's actions have knowingly and willingly used, disclosed, provided access to, and shared copyrighted NCR data, including, but not limited to, the NCR Dongles and the ATM System Application.

112.   Pendum's reproduction and/or distribution of the ATM System Application violates NCR's exclusive rights under 17 U.S.C. §§ 106 (1), (3).

113.   Pendum has realized and will continue to realize unjust profits, gains, and advantages as a proximate result of the aforementioned infringement.

114.   NCR has suffered damages and irreparable harm as a result of Pendum's copyright infringement and will continue to suffer irreparable injury unless Defendants and their officers, agents, and employees and all persons acting in concert therewith, are enjoined from engaging in any further such acts in violation of 17 U.S.C. § 501 *et seq*.

**B.     Burroughs Has Infringed on NCR's Copyrighted Works**

115.   Through the acquisition of Pendum, Burroughs has knowingly and willingly used NCR copyrighted Works without authorization.

116.   Section 6.3 of the Reseller Agreement states that NCR Diagnostic Tools are "solely for use in supporting Products" and may not be provided to "any other person or entity."

117.   Section 1 of the License Addendum states that NCR grants Pendum a license to use the NCR software, including the ATM System Application, "solely to service and maintain [p]roducts you [Pendum] have declared" provided that the license is subject to Pendum paying NCR the associated fee per such product.

118.   Upon information and belief, Pendum—without authorization from NCR—provided to Burroughs the NCR Dongles that enabled Burroughs to access NCR's ATM System Application.

119.   Upon information and belief, Burroughs controls and services Pendum's customer accounts that Pendum maintained before the Acquisition using NCR's Dongles and ATM System Application.

120.   Upon information and belief, in servicing the Frost Bank ATMs, Burroughs used the NCR Dongles to cause the copyrighted ATM System

Application to be copied to the working memory of NCR ATMs without authorization.

121.   The use of the NCR Dongles by Burroughs was improper and unauthorized.   Absent an express authorization from NCR (which NCR did not provide), Burroughs is without any right and/or ability to use the NCR copyright protected systems and materials to provide the aforementioned services as an authorized NCR reseller to *any* third party— including, but not limited to, Frost Bank.

122.   Even assuming Burroughs was assigned Pendum's rights under the Reseller Agreement (which NCR does not believe it was), Burroughs exceeded the scope of the Reseller Agreement, which only permits  providing the Products as an NCR-authorized reseller in the Territory.

123.   Without NCR's authorization, Burroughs also reproduced and distributed the copyright protected Data Sheets via its website,  located at:

http://burroughs.com/Products/ATMSolutions/NCRSelfservATMs/DepositATMs/NCRSelfServ32.aspx; and http://burroughs.com/LinkClick.aspx? fileticket=mmnfm0gk-cM%3d &tabid=395

NCR, however, did not authorize the Data Sheet to be uploaded thereto.  The Data Sheets are subject to registered copyright protection under Reg. Nos. TX 8-341-197, TX 8-341-199, TX 8-341-202, and TX 8-341-219 (*see* Exhibit K).

## COUNT IV: MISAPPROPRIATION OF TRADE SECRETS

**Against Defendants**
**Under the Trade Secrets Act of 2016, 18 U.S.C. § 1836(B)**

124.   NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs1-12, 23-24, 27-30, 32-33, 35, 38-40, and 44-60 of this Complaint.

125.   NCR is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate or foreign commerce.  Such trade secrets comprise NCR's financial, business, scientific, technical, economic and engineering information, including, but not limited to, plans, compilations, programs, devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs and codes, both tangible and intangible and stored, compiled and memorialized physically, electronically and graphically.  NCR's trade secrets include its ATM System Application, the System Application Diagnostics, the Dongles, and the Data Sheet (collectively, the "Trade Secrets").

126.   NCR has taken reasonable measures to keep such information secret.

127.   NCR's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

### A.    Pendum has Misappropriated NCR's Trade Secrets

128.   The Reseller Agreement granted Pendum, subject to strict limitations, the right to use NCR's Trade Secrets to act as an authorized NCR servicer or reseller within the Territory.   Otherwise, Section 8.2 of the Reseller Agreement requires any party to the Reseller Agreement "to prevent the disclosure of Confidential Information [as defined therein which includes the Diagnostic Tools] to any other person, unless disclosure is required by law."

129.   Section 6.3 of the Reseller Agreement classifies the Diagnostic Tools as being "NCR's confidential information" thereby forbidding Pendum from disclosing the same.

130.   Upon information and belief, Pendum disclosed to Burroughs, and possibly others, NCR's Trade Secrets, including, but not limited to, the Diagnostic Tools and access to the NCR Dongles.

131.   NCR did not authorize the disclosure of NCR's Trade Secrets by Pendum to any third party, including Burroughs. Pendum disclosed and used

NCR's trade secrets without NCR's express or implied consent.  In so doing, Pendum  violated federal law.

132.  Pendum's improper uses of NCR's trade secrets include Pendum's misrepresentation, breach or inducement of a breach of a duty to maintain secrecy of the trade secrets and breach of the confidentiality provisions contained in Section 8 of the Reseller Agreement.  Defendants, with intent to convert trade secrets that are related to a product or service used in or intended for use in interstate commerce to the economic benefit of NCR, and intended or knowing that the offense will injury NCR, knowingly did the following:

    a.    stole or, without authorization, removed, concealed, or by fraud, artifice, or deception obtained such information;

    b.    without authorization copied, duplicated, sketched, photographed, downloaded, uploaded, altered, destroyed, photocopied, replicated, transmitted, delivered, sent, mailed, communicated, or conveyed such information;

    c.    received or possessed such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

    d.    attempted to commit any offense described in paragraphs (a) through (c); or

    e.    conspired with one or more other persons to commit any offense described in paragraphs (a) through (c), and one or more of such persons performed an act to effect the object of the conspiracy.

133.   As a result of this misappropriation, NCR has suffered damages in an amount to be determined at trial.

### B.   Burroughs Misappropriated NCR's Trade Secrets

134.   Burroughs improperly obtained access to NCR's Trade Secrets from Pendum, via the Acquisition, and upon information and belief, has used that highly sensitive information for its benefit and in direct competition with NCR.

135.   Burroughs knew or had reason to know that its knowledge of the Trade Secrets was exclusively derived from NCR.  Pendum obtained access to the Trade Secrets under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets aside from specifically permitted uses under the Reseller Agreement.  NCR never authorized Burroughs to access and/or use NCR's Trade Secrets.

136.   Burroughs' improper uses of NCR's trade secrets include its gaining access improperly and using the highly sensitive information that it acquired from Pendum to gain a competitive advantage to the detriment of NCR.

137.   Upon information and belief, Burroughs serviced Frost Bank ATMs with the NCR Dongles, part of NCR's Trade Secrets.

138.   The use of the NCR Dongles was improper and unauthorized.  Absent an express authorization from NCR (which NCR did not provide), Burroughs is

without any right and/or ability to use the NCR proprietary, confidential information to provide the aforementioned services as an authorized NCR reseller to *any* third party—including, but not limited to, Frost Bank.

139.  Even assuming Burroughs was assigned Pendum's rights under the Reseller Agreement (which NCR does not believe it was), Burroughs exceeded the scope of the Reseller Agreement, which only permits Pendum to provide the Products as an NCR-authorized reseller in the Territory.

140.  Without NCR's authorization, Burroughs also reproduced and distributed the Data Sheet via its website located at:

http://burroughs.com/Products/ATMSolutions/NCRSelfservATMs/DepositATMs/NCRSelfServ32.aspx; and http://burroughs.com/LinkClick.aspx?fileticket=mmnfm0gk-cM%3d&tabid=395

at least as of Falls 2016. NCR, however, did not authorize the Data Sheet to be uploaded thereto.

## COUNT V: MISAPPROPRIATION OF TRADE SECRETS
### Against Defendants
### Under O.C.G.A §§ 10-1-760 (Georgia Trade Secrets Act)

141.  NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs 1-12, 23-24, 27-30, 32-33, 35, 38-40 and 44-60 of this Complaint.

142.   NCR is the owner of the Trade Secrets.  It has taken reasonable measures to protect the Trade Secrets from disclosure.

143.   Section 6.3 of the Reseller Agreement states that NCR Diagnostic Tools are "solely for use in supporting Products" and may not be provided to "any other person or entity." It also classifies the Diagnostic Tools as being "NCR's confidential information" thereby forbidding Pendum from disclosing the same.

144.   Section 1 of the License Addendum further states that NCR grants Pendum a license to use the NCR software, including the ATM System Application (part of NCR's Trade Secrets), "solely to service and maintain [p]roducts you [Pendum] have declared" provided that the license is subject to Pendum paying NCR the associated fee per such product.

A.     Pendum has Misappropriated NCR's Trade Secrets

145.   The Reseller Agreement granted Pendum, subject to strict limitations, the right to use NCR's Trade Secrets to act as an authorized NCR servicer or reseller within the Territory.  Otherwise, Section 8.2 of the Reseller Agreement requires any party to the Reseller Agreement "to prevent the disclosure of Confidential Information [as defined therein which includes the Diagnostic Tools] to any other person, unless disclosure is required by law."

146.   Upon information and belief, Pendum disclosed to Burroughs, and possibly others, NCR's Trade Secrets, including, but not limited to, the Diagnostic Tools and access to the NCR Dongles.

147.   NCR did not authorize the disclosure of NCR's Trade Secrets by Pendum to any third party, including Burroughs.

148.   As a result of this misappropriation, NCR has suffered damages in an amount to be determined at trial.

### B.    Burroughs Misappropriated NCR's Trade Secrets

149.   Upon information and belief, Burroughs serviced Frost Bank ATMs with the NCR Dongles.

150.   NCR did not, however, authorize the disclosure of NCR's Trade Secrets by Pendum to any third party, including Burroughs.

151.   The use of the NCR Dongles by Burroughs was improper and unauthorized.   Absent express authorization from NCR (which NCR did not provide), Burroughs is without any right and/or ability to use the NCR Trade Secrets to provide services as an authorized NCR reseller to *any* third party—including, but not limited to, Frost Bank.

152.   Even if Pendum assigned its rights under the Reseller Agreement to Burroughs (which NCR does not believe it has), Burroughs' use of the NCR

Dongles exceeded the scope of the Reseller Agreement, which only permits Pendum to provide the Products as an NCR-authorized reseller within the Territory.

153.  Burroughs also reproduced and distributed the Data Sheet via its website located without NCR authorization at:

http://burroughs.com/Products/ATMSolutions/NCRSelfservATMs/DepositATMs/NCRSelfServ32.aspx; and http://burroughs.com/LinkClick.aspx?fileticket=mmnfm0gk-cM%3d&tabid=395

NCR, however, did not authorize the Data Sheet to be uploaded thereto.

154.  As a result of this misappropriation, NCR has suffered damages in an amount to be determined at trial.

## COUNT VI: BREACH OF CONTRACT

**Against Pendum**
**Under Section 8 of the Reseller Agreement**

155.  NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs 1-12, 23-29, 30-33, 35-40, 42-43, and 47-60 of this Complaint.

156.  The Reseller Agreement is a valid and enforceable written contact.

157.  NCR performed all of its required obligations under Section 8 of the Reseller Agreement.

158.   Pursuant to Section 15 of the Reseller Agreement, a breach of Section 8 (i.e., prohibition against misusing confidential information) is not subject to arbitration.

159.   NCR develops, manufactures, markets, and distributes enterprise business software systems and provides related technical support and consulting services, all of which are central to NCR's market competitiveness.   Among these software systems, and previously discussed herein, are NCR's ATM System Application, the System Application Diagnostics, and the NCR Dongles (collectively, the "NCR Software").

160.   No party other than Pendum has authorization under the Reseller Agreement and Addendum thereto to use the NCR Software.

161.   Exhibit A of the Reseller Agreement provides that Pendum is not permitted to sell NCR products or provide NCR supported maintenance service on NCR Products to accounts outside of the Territory.

162.   Following the Acquisition, Pendum provided maintenance services to Frost Bank.   Upon information and belief, Pendum (and via its Acquisition of Pendum, Burroughs) serviced Frost Bank ATMs using the NCR Dongles that were intended to be used only for in-Territory financial institutions, thus using—without authority—NCR's Software.

163.   NCR's May 19, 2016 letter to Pendum notified Pendum that its contracting to provide NCR supported Maintenance services to Frost Bank was a breach of the Reseller Agreement and NCR instructed Pendum to immediately cure this breach within 30 days of receipt of the letter.   On information and belief, Pendum did not comply with that instruction.

164.   On information and belief, Pendum's servicing of NCR ATMs outside of the Territory is not limited to Frost Bank and involves at least one other major financial institution.   Upon information and belief, Pendum—representing itself as an authorized NCR reseller (outside of the Territory)—has also actively solicited and bid on business from Bank of the West and Hancock Bank.

165.   Pendum has also improperly used, disclosed, provided access to, and shared NCR confidential, proprietary trade secret information, including, but not limited to, the NCR Dongles.   This exceeds the scope of the Reseller Agreement, which only permits Pendum to provide the Products as an NCR-authorized reseller in the Territory.

166.   NCR has been damaged by Pendum's breaches of Section 8 of the Reseller Agreement and in an amount to be determined at trial.

## COUNT VII: BREACH OF CONTRACT

**Against Burroughs**
**Under Sections 6 And 9 Of The Reseller Agreement**

167.   NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs 1-12, 25-39, 43, and 49-60 of this Complaint.

168.   Sections 6 and 9 of the Reseller Agreement are valid, enforceable written provisions of the Reseller Agreement with definite and certain terms.

169.   NCR performed all of its required obligations under Sections 6 and 9 of the Reseller Agreement.

170.   Pursuant to Section 15 of the Reseller Agreement, a breach of Sections 6 and/or 9 (i.e., intellectual property infringement) is not subject to arbitration.

171.   To the extent that Pendum assigned the Reseller Agreement to Burroughs (which NCR does not believe it has), Burroughs breached the intellectual property licenses contained in Sections 6 and 9 by using NCR's software and Marks outside the permitted Territory and/or without prior approval.

### A.    Burroughs has breached Section 9 of the Reseller Agreement

172.   The Reseller Agreement restricts the use of NCR Marks.  Specifically, Section 9.5 prohibits the use of any marketing materials with NCR's Marks which are not pre-approved by NCR and/or conform to its standards.

173.   Burroughs did not have permission or authority during the relevant time period to advertise or promote NCR ATMs on its website, nor did it have authority to use the NCR logos, Marks or Data Sheets.

174.   Burroughs' unlawful use of NCR's Marks, even if Pendum improperly assigned its rights to Burroughs, was without NCR authorization.

### B.    Burroughs has breached Section 6 of the Reseller Agreement

175.   Section 6.3 of the Reseller Agreement states that NCR Diagnostic Tools . . . . are "solely for use in supporting Products" and may not be provided to "any other person or entity."

176.   Upon information and belief, Pendum provided to Burroughs the NCR Dongles without authorization.

177.   Upon information and belief, Burroughs serviced Frost Bank ATMs with the NCR Dongles.

178.   Upon information and belief, Burroughs servicing of NCR ATMs outside of the Territory is not limited to Frost Bank and involves at least one other major financial institution.

179.   The use of the NCR Dongles was improper, unauthorized, and, to the extent applicable, exceeded the scope of the Reseller Agreement, which only permits servicing of NCR Products in the Territory.

180.   Without NCR's authorization, Burroughs also reproduced and distributed the Data Sheet via its website located at:

http://burroughs.com/Products/ATMSolutions/NCRSelfservATMs/DepositATMs/NCRSelfServ32.aspx; and http://burroughs.com/LinkClick.aspx?fileticket=mmnfm0gk-cM%3d&tabid=395

NCR, however, did not authorize the Data Sheet to be uploaded thereto.

181.   Burroughs' unauthorized use of NCR's Marks has caused its clients confusion, and damaged it in an amount to be determined at trial.

## COUNT VIII: TORTIOUS INTERFERENCE WITH CURRENT AND PROSPECTIVE BUSINESS RELATIONS

### Against Burroughs

182.   NCR hereby realleges and incorporates herein the allegations set forth in Paragraphs 1-12, 35-36, 38-41, 43-46, 49-58, and 60 of this Complaint.

183.   Upon information and belief, per instructions and/or demands from Burroughs, Pendum provided to Burroughs NCR's Software and Trade Secrets, including, but not limited to, the NCR Dongles.

184.   Upon information and belief, in violation of the Reseller Agreement, Pendum's service provider business was completely integrated into Burroughs' service provider business on or after February 2015.   Nonetheless, Burroughs was not authorized to assume any rights or privileges under the Reseller Agreement without any authorization from NCR despite the Acquisition.

185.   Upon information and belief, Burroughs continues to control and service Pendum's customer accounts—the accounts that Pendum maintained before the Acquisition pursuant only to the Reseller Agreement.

186.  Upon information and belief, Burroughs serviced Frost Bank and other ATMs with the NCR Dongles with the permission and consent of Pendum in violation of the Reseller Agreement.

187.  Burroughs and NCR have never had any contract that renders Burroughs an NCR-authorized reseller or service provider.

188.  Burroughs has never had permission nor authority to advertise or promote NCR ATMs on its website, nor the authority to use the NCR logos, Marks

or the Data Sheets.  These rights were exclusively provided to Pendum and limited by the Reseller Agreement.

189.   Burroughs further actively encouraged Pendum to breach the Reseller Agreement with NCR by servicing Frost Bank and improperly gaining access to NCR Software and Marks, thereby unlawfully interfering with the terms and conditions of the Reseller Agreement between NCR and Pendum.

190.   Burroughs had no right to interfere with the Reseller Agreement between NCR and Pendum.

191.   Without NCR's authorization, Burroughs purposely and intentionally, without authorization, engaged in conduct before the acquisition and also used the Acquisition, along with the NCR Software and Marks it received from its improper interference with the Reseller Agreement, to misrepresent itself and Pendum, in bad faith, as an authorized NCR reseller to current and/or potential NCR consumers.

192.   Upon information and belief, as a result of Burroughs' improper and unprivileged conduct, NCR customers, including Frost Bank, failed to enter into a business relationship with NCR as anticipated.

193.   Burroughs, acting without authorization or privilege, intentionally disregarded the contractual relationship between NCR and Pendum and, purposefully interfered with that business relationship to the detriment of NCR.

194.   Burroughs' actions have caused and continue to cause irreparable injury to NCR's business, reputation and goodwill, and will continue to do so unless restrained and enjoined.

195.   NCR has suffered damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

196.   WHEREFORE, NCR respectfully requests that the Court enter judgment against Defendants as follows:

a.   That the Court issue temporary and permanent injunctive relief against Defendants, and that Defendants, their officers, agents, representatives, employees, successors, and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from:

i.   Infringing NCR's copyrights;

ii.   Infringing NCR's trademarks;

iii.   Using NCR's trademarks (or any variation thereof) in connection with the marketing, promotion, advertising, or

sale of products or services without NCR's pre-approval thereof;

iv.  Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (iii) hereof.

b.  That the Court seize on behalf of NCR all infringing goods that Defendants possess as well as award to NCR all damages available under the Lanham Act for Defendants' willful and unlawful acts in violation of the same;

c.  That the Court award to NCR all damages available thereto under Lanham Act, 15 U.S.C. §§ 1051, *et seq.* for Defendants' willful and unlawful acts of trademark infringement;

d.  That the Court award to NCR all damages available thereto under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, for Defendants' willful and unlawful acts of copyright infringement;

e.     That the Court award to NCR all damages available thereto under the Defend Trade Secrets Act of 2016 for Defendants' willful and unlawful acts in violation of the same;

f.     That the Court award to NCR all damages available thereto under O.C.G.A. §§ 10-1-760 of Georgia's Trade Secrets Act for Defendants' willful and unlawful acts in violation of the same;

g.     That the Court award NCR all damages caused by Defendants' willful and unlawful acts;

h.     That the Court award to NCR all gains, profits, and advantages derived by Defendants as a result of Defendants' willful and unlawful acts;

i.     That the Court award NCR enhanced damages available by applicable law as a result of Defendants' willful and unlawful acts;

j.     That the Court award to NCR all just and appropriate restitution;

k.     That the Court enter on behalf of NCR an award of punitive damages as provided by law;

l.      That the Court grant to NCR all other relief which is just and

proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, NCR hereby

demands a trial by jury on all issues so triable.

Respectfully submitted this 10th day of August, 2018.

> By: /s/  Stephen E. Baskin
> Jeremy U. Littlefield
> GA Bar No. 141539
> Rachel F. Gage
> GA Bar No. 547982
> ROBBINS ROSS ALLOY BELINFANTE
>   LITTLEFIELD LLC
> 999 Peachtree Street NE, Suite 1120
> Atlanta, Georgia 30309-3996
> Telephone: (678) 701-9381
> Facsimile: (404) 856-3250
> jlittlefield@robbinsfirm.com
> rgage@robbinsfirm.com
>
> Stephen E. Baskin (admitted pro hac vice)
> VA Bar No. 47567/DC Bar No. 456015
> Dara M. Kurlancheek (admitted pro hac vice)
> NY Bar No. 4701181
> Richard M. Assmus (admitted pro hac vice)
> IL Bar No. 6255570
> Daniel Fisher (admitted pro hac vice)
> NY Bar No. 5194543
> MAYER BROWN LLP
> 1999 K Street, NW
> Washington DC, 20006

Telephone: (202) 263-3364
sbaskin@mayerbrown.com
dkurlancheeck@mayerbrown.com
rassmus@mayerbrown.com
dfisher@mayerbrown.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

*/s/   Stephen E. Baskin*

*Counsel for Plaintiff NCR Corporation*